**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OSCAR J. BASORA | : | |
| | : | |
| Appellant | : | No. 1263 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 23, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003690-2022

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JULY 08, 2026**

Oscar Basora appeals from the judgment of sentence entered after he was convicted of kidnapping of a minor and other charges[1] based on confining his then-12-year-old daughter in a room in his basement.  He challenges the denial of his motion for a new trial based on the weight of the evidence. Because the trial court's ruling was within its discretion, we affirm.

At trial, the Commonwealth presented evidence that Basora regularly secured the victim in a room in his basement until January 23, 2022, when a neighbor heard the victim yell for help and called the police.  York City Detective Galen Detweiler responded and saw the "deplorable" state of the room where Basora had kept the victim. N.T., 1/13/25–1/15/25, at 93.

---

[1] 18 Pa.C.S. §§ 2901(a.1)(3) (kidnapping of a minor), 2903(c) (false imprisonment), 2902(c)(1) (unlawful restraint), 4304(a)(1) (endangering the welfare of children, two counts).

Relevant to this appeal, Detective Detweiler testified that the door to the room was "very flimsy." *Id.* at 93, 118. The victim testified that Basora locked her in the room to punish her; on January 23, 2022, it was because she had cups of liquid in her room. *Id.* at 138–39, 151, 159, 164. The victim testified that she sometimes spent time in her own room at Basora's house, where she had a mattress, a dresser, and a lamp. *Id.* at 172–73. Although the victim testified that Basora always kept the door shut with a snow shovel and that she could not escape, she acknowledged that she told an interviewer that she knew how to get out of the room. *Id.* at 143, 160–61. Although the victim was wearing thin clothing when police arrived, she testified that Basora previously allowed her to have clothes, a blanket, a sleeping bag, and a chair when he locked her in the basement room. *Id.* at 151. Although the lightbulb was removed when police arrived, the victim testified that she had seen it working previously. *Id.* at 163–64. The victim acknowledged at the time of trial that she was living with her mother, who had portrayed Basora negatively. *Id.* at 168.

Also relevant to this appeal, Brandon Moul testified that he worked in pest control and that Basora trained him in pest control and martial arts. *Id.* at 217–18. Previously, when Moul was in the small room in the back of the basement, he saw a punching bag and a speed bag there. *Id.* at 220. Moul never noticed anything unusual in the basement or the back room. *Id.* Moul testified that in the prior summer, Basora's daughter came to work in pest control with Basora two or three times per week, "like his shadow." *Id.* at

221–22. They went to her favorite Chinese buffet "too many times to count," and there was nothing unusual when Basora was out in public with her. *Id.* at 222. In her testimony, the victim agreed that Basora sometimes took her to work. *Id.* at 166.

The jury found Basora guilty of the above crimes. The trial court sentenced Basora to an aggregate term of 54 to 108 months of confinement followed by 1 year of probation. The Commonwealth moved to modify Basora's sentence by adding a no-contact provision; the trial court granted the motion.

Basora filed a timely post-sentence motion for a new trial, in which he argued that three of his convictions were against the weight of the evidence. Basora's motion noted that the door to the back room could have been pushed open and that Basora sent the victim to the basement as a form of punishment rather than to terrorize her. Post Sentence Motion, 5/5/25, at 2.

The trial court entered an opinion rejecting Basora's arguments. Order & Opinion, 8/8/25. The court analyzed why the weight of the evidence supported Basora's false imprisonment and unlawful restraint convictions despite evidence that the victim could have broken out from behind the door.

> [Basora] submits that the door holding the victim, his daughter, in the basement storage area, was flimsy, and that the victim knew how to get out of the room on her own. . . . The victim could hear [Basora] bracing the door confining her with a shovel, and [Basora] was observed by Detective Galen Detweiler to remove that shovel from in front of the door.
>
> Regarding false imprisonment, the weight of the evidence was firmly in the Commonwealth's favor. A child was barricaded

- 3 -

in a storage room with a shovel that substantially interfered with her liberty. The door, which had no handle on the inside, was closed and locked. The victim testified that when the outside handle of the door was turned, she could not escape. [Basora] put a lock on the outside of the door to stop the victim from getting out. [Basora] clearly took steps to neuter any success the victim had in escaping and, even if the victim could escape, her liberty was clearly substantially interfered with. This also holds for unlawful restraint, in which the victim was clearly restrained unlawfully. The detective did not encounter the victim roaming freely about the house or even about the basement. The detective first encountered the victim restrained behind a door braced by a shovel. . . . The jury heard the evidence about the door being flimsy and about the victim being able to get out at times. We were not shocked that the jury found that the victim's liberty was substantially interfered with or that the victim was unlawfully restrained when [Basora] placed her in a room with a door secured by a braced shovel.

*Id.* at 3–5 (record citations omitted, slightly edited for clarity). The trial court next rejected Basora's argument that his kidnapping conviction was against the weight of the evidence because the victim understood that Basora was punishing her.

[R]egarding the intent to terrorize for kidnapping, the victim agreed that her placement in the basement was always connected with punishment for her having done something wrong. . . . [T]he defense challenges whether the weight of the evidence demonstrated an intent by [Basora] to terrorize the victim. [Basora] believes that because the victim being locked in the basement was always related to punishment then there could not have been any intention to terrify the victim. This ignores the evidence of actions that passed well beyond the bounds of punishment and into the realm of terror.

[Basora] would *remove the lightbulb* in the basement. [Basora] would remove *all* the lightbulbs from the basement. The air in the room was heavy and thick, smelling of a mixture of mold and chemicals. The room was filled with containers containing exterminating chemicals [Basora] used for his job. [Basora] put down mouse traps to prevent his daughter from reaching for anything. The victim had to pee in a cup and was provided with

- 4 -

shopping bags for defecation. Regarding the police, [Basora] told the victim "[m]any horrible things, like they would take me away from him if I ever mentioned or revealed that I was in a basement." Once the police freed her, the victim pretended she had been having fun for fear that she would be taken from her father. Over time, the periods in which the victim was locked in the room grew longer, and [Basora] removed creature comforts one by one until the victim had nothing and was forced to strip naked. Once, the victim was shut in the room for two days. [Basora] also inflicted mental torture in the form of telling the victim that there was an Annabelle doll hidden inside of the basement wall that was watching the victim. This left the victim "[v]ery scared." The victim explained that the Annabelle doll was a doll possessed by demons in a horror movie [Basora] watched with her. At times, locked in the room, the victim would hear the music box from the movie playing. Our sense of justice was not shocked by the jury's verdict. We were shocked and horrified by [Basora's] treatment of his own daughter.

*Id.* at 4–6 (record citations omitted, edited for clarity). The trial court specifically rejected Basora's contention that the exculpatory evidence rendered the jury's verdict against the weight of the evidence.

[A]s highlighted by [Basora] and discussed above, there are pieces of evidence which undermine the Commonwealth's case; however, the test is not whether there is any evidence that goes against the Commonwealth's assertions. Rather, [the trial court] is to examine whether the verdict was "so contrary to the evidence as to shock one's sense of justice." In light of the evidence favoring conviction, . . . we were not shocked by the verdict and, therefore, we were barred from overturning that verdict. Upon receiving the verdict, we did not lose our breath or threaten to slip from the bench. In spite of some inconsistencies, which are present in all cases, Lady Justice is still firmly rooted atop her pedestal. As to the weight of the evidence, no relief is due on this claim.

*Id.* at 6.

Basora timely appealed. As directed, he filed a concise statement of errors complained of on appeal. He included a claim that the trial court's

- 5 -

ruling was an abuse of discretion because the court "failed to fully consider that the evidence demonstrated the victim was aware she could escape the basement room even though the door was locked and that [Basora] placed [the] victim in the basement as a form of punishment which did not rise to the level of an intent to terrorize." Statement of Errors, 10/10/25, at 2.

The trial court issued an extensive opinion in support of its rulings. As to Basora's weight claim, the trial court incorporated its prior order denying Basora's post-sentence motion. The trial court explained that despite the evidence that she could have escaped, Basora "mentally bound the victim to the basement closet." Trial Court Opinion, 12/22/25, at 23–24.

> Moreover, again, [Basora] ignored the testimony in which the victim stated that there were means by which [Basora] could orient the handle of the door to the basement room such that the victim could not escape. The Court fully considered the child's statement that she, at least at times, had escaped her confinement. [Basora] does not appear to fully appreciate or fathom the victim's conditions of captivity.
>
> Finally, as to the assertion that the victim was placed in the basement for punishment and that [Basora's] actions in doing so did not rise to the level of an intent to terrorize, we reject such a contention. . . . [Basora] clearly intended to terrorize the victim. In recapitulation, [Basora] exposed the victim to a horror movie with a possessed doll named Annabelle and then terrorized the victim by claiming that Annabelle was inside the basement walls watching the *child* who had been sealed up in what amounted to a lightless dungeon. [Basora] even related, in an almost seeming boast, the same or similar conduct to a neighbor. This was not punishment. This was calculated, demented, and sadistic behavior from a person that the child was supposed to be able to turn to for love, care, and protection.

*Id.* at 24. The trial court therefore concluded it did not err as Basora alleged.

- 6 -

Basora maintains one issue for review:

The trial court abused its discretion when it denied [Basora] a new trial because while the Court acknowledged there was evidence which undermined the Commonwealth's case, it failed to fully consider that evidence demonstrated the victim was aware she could escape the basement room even though the door was locked and that [Basora] placed victim in the basement as a form of punishment which did not rise to the level of an intent to terrorize.

Basora's Brief at 4.

Basora argues that the trial court failed to fully account for the evidence that undermined the verdict. He faults the trial court for minimizing the victim's prior successful escapes and Basora's disciplinary purpose. Basora emphasizes that Brandon Moul testified the basement was not always as cold and dark as the victim recalled. He adds that the victim could have been influenced by her mother's negative impression of Basora, and that the victim had an otherwise normal life. Basora thus contends that the trial court abused its discretion by concentrating only on the conditions when police encountered the victim, not on the victim's ability to escape, Basora's disciplinary purpose, and Moul's observations.

This Court reviews a trial court's denial of a motion for a new trial to determine whether the trial court abused its discretion, not to separately assess "the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Akhmedov*, 216 A.3d 307, 325 (Pa. Super. 2019) (quoting *Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. 2012)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of

judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Rogers**, 259 A.3d 539, 541 (Pa. Super. 2021) (quoting **Commonwealth v. Santos**, 176 A.3d 877, 882 (Pa. Super. 2017)).

We keep in mind that a trial judge ruling on a weight motion does *not* become a "thirteenth juror" but rather determines whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000) (quoting **Thompson v. City of Philadelphia**, 493 A.2d 669, 673 (Pa. 1985)).

The trial court should grant a new trial for a verdict that "is truly shocking to the judicial conscience," as when "the figure of Justice totters on her pedestal" or "the jury's verdict, at the time of its rendition, causes the trial judge to lose [her] breath, temporarily, and causes [her] to almost fall from the bench." **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (ultimately quoting **Lupi v. Keenan**, 151 A.2d 447, 452–53 (Pa. 1959) (Musmanno, J., dissenting)).

Here, the trial court thoroughly articulated its reasoning for rejecting Basora's motion. The trial court described the evidentiary presentation from trial, including the circumstances that Basora now highlights. From the trial court's comprehensive opinion, we discern no abuse of discretion. Basora's sole appellate issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/08/2026